## HENRY LADD ET AL. v. ELIZABET NEY.

Decided May 25, 1904.

**1.—Damages—Charge.**

A charge making the measure of damages for loss of nonmarketable personal property, in case it was impossible to replace it, the value thereof to the owner, held erroneous where there was no testimony showing that it was impossible to replace it.

**2.—Joint Wrongdoers—Indemnity.**

The general rule that there can be no right to contribution or indemnity between joint tort feasors applies in case of defendants charged jointly with conspiracy to suppress bidding at a sale of plaintiff's property for customs dues, whereby one bid it in for a nominal sum.

**3.—Damages—Excessive.**

Evidence considered on which a recovery of damages for sacrifice of plaintiff's property, two marble busts executed by her, by agreement between defendants suppressing competition at a sale for customs duties, was held excessive—the recovery being for the amount usually charged by her for such work, less the duties; but the property having no market value, and having been made with the understanding that the artist gave her labor to the persons for whom they were designed, who were to pay her only the expenses incurred.

**4.—Charge—Request.**

Requesting a peremptory instruction to find for defendants on a defense involved was not equivalent to a request to submit such issue to the jury which it would have been error to refuse.

Appeal from the District Court of Travis. Tried below before Hon. George Calhoun.

*West & Cochran, Brooks & Shelley, D. W. Doom,* and *D. H. Doom,* for appellants.

*Fiset, Miller & McClendon,* for appellee.

KEY, ASSOCIATE JUSTICE.—In 1897 Elizabet Ney, who is an artist of note, caused two busts to be shipped from Germany addressed to her at Austin, Texas, and consigned to H. Mosle, Galveston, Texas. One was a bust of Judge Reagan and the other a bust of Mrs. Graham, a daughter of Mrs. Governor Pease. They were marble busts and were executed by Miss Ney. She seems to have expected that they would be admitted free by the customhouse officials at Galveston, but they were not, the total amount of customs duties assessed and demanded being $374. Miss Ney was notified by Mosle of these charges and failed to pay them, whereupon, after holding the busts the length of time required by law, the customhouse officials advertised and sold them at public auction in the manner prescribed by law, and Henry Ladd having made the highest bid, which was $11, became the purchaser of both busts. Mosle had paid freight and other charges against the busts amounting to $30.85, and gave notice at the sale of his claim therefor, asserting a lien to that extent upon the property. In reply to what Mosle said, Ladd stated before purchasing the property that he would pay the charges against it, and thereafter paid Mosle $30.85. Ladd

delivered the bust of Mrs. Graham to Mrs. Pease, who is his aunt, and sold the other one to Judge Reagan for $100.

Thereafter Miss Ney brought this suit against Ladd and Mosle to recover the two busts and in the alternative for damages, alleging that they entered into a conspiracy to suppress competition at the sale referred to, thereby enabling Ladd to purchase the property for the nominal sum of $11. She also asserted a separate cause of action against Mosle, alleging that he, as her agent, had agreed to bid the property in for her and failed to do so. The plaintiff made a tender to Ladd and deposited in court the sum of $51.25 to cover the outlay referred to. Further, on the issue of damages, she virtually admitted that the government charges of $374 should be deducted from the value of the busts, and the verdict shows that the jury made such deduction in fixing the value of the property.

The defendants answered by exceptions to the petition, general denial and special pleas not necessary to state; and the defendant Mosle pleaded over against his codefendant Ladd, alleging that if he, Mosle, was liable to the plaintiff, Ladd was liable to him. Ladd excepted to that plea.

There was a jury trial, resulting in a judgment for the plaintiff against both defendants for the recovery of both busts, and in the alternative for $1226, as damages, and for Mosle against Ladd for whatever amount he might pay the plaintiff on her judgment.

Both defendants have appealed, and Ladd has appealed ·from the judgment in Mosle's favor against him. This is the second time the case has been in this court, and some of the questions now presented were decided against the appellants on the former appeal, and we see no reason for changing the rulings then made. Ney v. Ladd, 68 S. W. Rep., 1014.

On the measure of damages, the trial court instructed the jury as follows: "Where the property is nonmarketable, the measure of damages, in case the property could be reproduced or replaced, would be the costs of reproducing or replacing the same, but if it is impracticable to replace the property, or any portion thereof, the value of the property to the owner would be the proper measure of damages."

Appellant Ladd assigns error upon this charge, and we hold that the assignment is well taken. The latter part of this charge should not have been given, because there was no testimony tending to show that it was impracticable to replace the property, or any portion thereof; and therefore the charge should not have authorized the jury, even in the alternative, to consider the value of the property to the owner. For the reason stated, we sustain Ladd's third assignment of error addressed to the charge referred to.

We also sustain Ladd's fifth and sixth assignments of error, which complain of the court's charge and the refusal of a requested instruction relating to the issues between Ladd and Mosle, founded upon Mosle's cross-action against Ladd. The only theory on which the plain-

tiff could recover against both defendants was on an alleged conspiracy between them, and if Mosle was a party to the conspiracy he was an original and affirmative tort feasor, and was not entitled to contribution or indemnity. The general rule is that joint tort feasors are not entitled to indemnity or contribution, and this is conceded by counsel for Mosle, who contend that this case falls within a well established exception to the rule referred to; and they rely on City of San Antonio v. Smith, 94 Texas, 271, as supporting their contention in this case. In that case Mr. Justice Brown announces the rule in this language: "It is well settled that under some states of fact two parties may be liable to another for a tort, the one by construction of law on account of some omission of a duty of protection or care owed, and the other because he is the active perpetrator of the wrong, and that in such cases the right of indemnity may exist in the one whose wrong was only a secondary one."

Applying the rule quoted to this case, we think it must be held to exclude the demand asserted by Mosle against his codefendant, because if they are both liable, such liability rests upon the existence of a conspiracy between them which resulted in wrong and damage to the plaintiff, and if Mosle was a party to the conspiracy in the manner alleged by the plaintiff, he was an active participant in the wrong.

If Mosle can assert any right of recovery against Ladd, predicated upon payment by him of a judgment in favor of Miss Ney, it would not rest upon the right to indemnity or contribution, but upon the theory that, as between him and Ladd, such payment would vest title to the property in Mosle, and the measure of damages, if Ladd has converted the property to his own use, would not necessarily be the amount paid by Mosle to Miss Ney. The property had no market value, and, unlike Miss Ney, Mosle had no contract by which he could dispose of it for a fixed sum. Besides, in adjusting the matter between Mosle and Ladd, the former should be charged with the amount the latter paid him in satisfaction of his claim asserted against the property. But recovery against Ladd was not sought on that theory, and therefore we do not feel called upon to make any ruling in regard to it, and do not decide whether or not such right of recovery could be maintained.

We also sustain appellant Mosle's twenty-fourth assignment of error which complains of the action of the court in overruling his motion for a new trial upon the specified ground that the verdict, in fixing the value of the busts, was excessive. The verdict fixed the value of the two busts at $1226, after deducting the customs duties of $374. In other words, the verdict fixes the value of the two busts at $1600.

The plaintiff alleged in her petition and proved by uncontroverted testimony that the busts had no market value. She testified that her expenses on the Graham statue were about $250 and on the Reagan statue about $300, which amounts were paid by her and had not been refunded. It is conceded by her counsel that she was the only witness who testified as to the value of the property, and her testimony is quoted

in their brief as follows: "There was no market value for this statuary in Galveston. For finished busts in marble, I always charge and receive $1000 each. I have done work of that kind in Texas and received that price for it. * * * When I make a bust in marble I get $1000 for it; that is my universal price, but I make presents very often. The busts involved in this case were not made for sale. * * * Considering the material in them and the work I have done, I consider that they are worth $800 apiece. I claim $800 for the two (instead of $1000) because I have not been permitted to put on the last touches. In making a bust, the artist makes a model in clay; it is then taken to a marble cutter, who cuts in marble as near as he can; then the artist puts the finishing touches to it. I was in Berlin and did as much as I could on these busts and left them with my marble worker to send them on to me here after he had done the unimportant work. The approximate expense for the small bust was between $225 and $250. That was the bust of Mrs. Graham. The expense of the larger bust was nearly $300."

Counsel for Mosle point out other testimony which we think bears on the measure of damages, and which will be hereafter referred to. Taking the testimony relied on by appellee, as quoted above, and it is difficult to see how she can be entitled to recover $1226, the amount awarded her as damages by the judgment of the court. She alleged and proved that the property had no market value, and we have held that the court should not have submitted to the jury any issue in determining the measure of damages, except the cost of reproduction, there being no evidence tending to show that it was impracticable to reproduce the property. There is no evidence tending to show the value of the time or work contributed by appellee herself in making the busts; and therefore, as well as for another reason hereafter stated, she was not entitled to recover anything under that head. This leaves the cost of the two busts as established by her own testimony at not exceeding $550, which, after subtracting the $374 government charges, leaves $176.

There was other testimony, however, showing that the plaintiff was not entitled to recover any more than the amount stated. The testimony referred to is to the effect that she had an agreement with Judge Reagan concerning his bust, and with Mrs. Pease concerning the other bust, to the effect that she was to be reimbursed for her actual outlay, and was to donate her own work. She testified that "the busts involved in this case were not made for sale. They were made with the understanding that my outlay was to be refunded to me." And in a letter written to Mosle she said: "Please write the bill of charges themselves and those abroad in English, as these have to be paid by the two different parties concerned in it, and they must be able to understand it." And she testified that the two parties referred to in the letter as the ones who had to pay the bills were Judge Reagan and Mrs. Pease; and also said: "My understanding with the Pease family

was that I was to execute this marble bust (the bust of Mrs. Graham) for the actual outlay, charging nothing for my work." And in a letter to Ladd she said: "My cash outlay on Reagan's bust was 1070 marks (about $250), which Judge Reagan is under obligation to pay back to me."

This testimony, which comes from the plaintiff herself and is not contradicted by any other testimony in the record, shows with reasonable certainty, if not conclusively, that if the defendants' had not committed the wrong charged against them, or even if the customhouse officials had assessed no charges, and the busts had been delivered to the plaintiff in Austin free from all charges, she could not and would not have realized more for them than $550. They had no market value, and the only possible way for the plaintiff to realize money upon them was to deliver them to Judge Reagan and Mrs. Pease, in pursuance of the contract which she says she had with them, thereby rendering them liable to her for the contract price, which did not include any compensation to the plaintiff for her artistic labors, and was limited to her actual outlay, not exceeding, according to her own testimony, $550. Therefore, after deducting the government charges, which she concedes should be deducted, she was not entitled to recover more than $176. We are not called upon to decide whether the government charges should be deducted, as that appears to be conceded.

If it be assumed that the court's charge on the measure of damages was correct, and that it was proper for the jury to fix the value of the property at its actual worth to the plaintiff, we should nevertheless hold the verdict to be excessive.

The plaintiff testified that the busts were not entirely finished, and, considering the material in them and her work upon them, she considered them worth $800 each; but her reason for so estimating their value is made plain by her further statement: "When I make a bust in marble I get $1000 for it; that is my universal price, but I make presents very often. I claim $800 for them (instead of $1000) because I have not been permitted to put on the last touches."

There is nothing in the testimony hinting at any other reason for so fixing the value of the property. The peculiar nature of this property must be kept in mind. If the property under consideration is an ordinary piece of furniture, a barrel of flour, ten yards of cloth, or many other things that might be mentioned, it requires no evidence to show that it can be so used by its owner as to render it of some value. Also if it be a family picture, though without market value, we may conclude that it has a value to the owner, because it discloses to him the features of a relative.

The busts in question are not shown to represent relatives, or even friends, of the plaintiff. It does not appear that they were, as works of art, so superior, as compared with the plaintiff's other aritstic work, as to render them of special value to her on her account, nor does it appear that she could have devoted them to any valuable use other than

delivering them to the parties for whom they were made; but, on the contrary, the plaintiff testified that they were not good enough for exhibition.

So it appears, when the plaintiff's testimony is properly analyzed, that she fixes the value of this, as well as her other artistic work, by the contract price. She does not say so in so many words; but she does in effect say that her usual contract price is $1000, and therefore she estimates these busts as worth $800 each, although she had contracted to make them for much less, and could not have disposed of them or used them in any manner by which she could have realized more than the contract price.

The measure of damages has been a fruitful source of discussion at the bar, on the bench and by text writers; and this court has been called upon to deal with it in many aspects. In Moore, McKinney & Co. v. King, 4 Texas Civ. App., 397, we declined to follow the general rule that the value of the property taken, with interest from the time of its seizure, is the measure of damages for the conversion of property, because it was shown by the testimony in that case that the rule referred to would not afford adequate compensation for the injuries sustained; while in Field v. Munster, 11 Texas Civ. App., 341, we held that where property is wrongfully seized and sold under execution, and the owner becomes the purchaser at a less price than its market value, he is not entitled to recover its market value at the time of its seizure. Although our decision in the latter case was in conflict with a former decision of the Supreme Court, the latter court refused to grant a writ of error and approved the rule announced by this court, and we quote from the opinion in that case the following language, which is equally applicable to this case: "The purpose of the law in awarding actual damages is to repair the wrong that has been done, to compensate for the injury inflicted, but not to impose a penalty. Any method that will afford the injured party more than just and reasonable compensation, is not the correct measure of actual damages, whether the injury be the result of a willful wrong or an honest mistake."

Appellant Mosle's special charge number 13 correctly stated the measure of damages, but was properly refused, because it contained a peremptory instruction to find for him.

Counsel for Mosle contend that the issues presented by the plaintiff's pleading should not have been submitted to the jury, and that the court should have peremptorily instructed a verdict for the defendants, among other reasons because (so it is contended) the testimony disclosed a scheme on the part of the plaintiff and one Runge to procure a sale of the property and buy it in at a nominal sum, and thereby evade the payment of the government dues. If such scheme was entered into, and especially if the customhouse officials were parties to the scheme, such proceeding was a fraud upon the government, and the plaintiff would not be entitled to recover. However, while there was testimony tending to support the contention urged, it was not such

as would have authorized a peremptory instruction. If a proper charge covering that phase of the case had been requested, it would have been the duty of the court to give it, and present the issue to the jury.

Upon the other questions of law presented in the briefs we rule against the appellants. On the issues of fact, upon which the questions of liability of the defendants depend, we express no opinion.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*